O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:              Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

# I.     INTRODUCTION

This matter is before the Court on the motion of Defendant Novartis Pharmaceuticals Corporation for summary judgment or, in the alternative, for summary adjudication.  Plaintiff Lori Schlaifer's[1] four claims rest entirely on the premise that the termination of her employment with Defendant was due to gender and pregnancy discrimination and in retaliation of her complaints of such discrimination.  Because Plaintiff has not submitted evidence sufficient for any trier of fact to conclude that the true reason for her termination was discrimination, the Court GRANTS Defendant's motion[2] for summary judgment.

# II.     BACKGROUND

In June 2001, Defendant hired Plaintiff as a pharmaceutical sales representative. (Defendant's Statement of Uncontroverted Facts ("SUF") ¶ 1.)  Plaintiff's primary job responsibility was to meet with health care customers or clinicians to discuss Defendant's pharmaceutical products.  (Plaintiff's Statement of Genuine Issues ("SGI") ¶ 2.) Defendant required Plaintiff to document any in-person communications she had with health care practitioners in a computer software program and to record accurately any such sales calls she made.  (SUF ¶¶ 4, 6.)

---

[1]  The caption of this case misspells Plaintiff's last name as "Schlaiffer."

[2]  Dkt. No. 49.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

Plaintiff took a maternity leave of absence from her employment with Defendant beginning on May 23, 2005. (*Id.* ¶ 7.) Plaintiff admits that she had no problem obtaining permission from Defendant to take the maternity leave. (*Id.* ¶ 8.) Plaintiff returned to work on a full-time basis on February 1, 2006. (*Id.* ¶ 9.) On February 2, 2006, Plaintiff sent an email to her manager (George Manouly), her manager's supervisor (Bill Spelta), and a human resources representative (Samantha Fentress), in which she reported that Manouly had contacted her during her maternity leave to tell her that her territory may be collapsed if she did not return to work earlier than she had planned. (*Id.* ¶ 10.) In response, Fentress called Plaintiff and informed her that she did not have to attend a meeting that day with Manouly, that she was "a rep in good standing" and that her job was not in jeopardy. (*Id.* ¶¶ 11-12.) Within "a day or two of Plaintiff's email," Defendant terminated Manouly's employment. (*Id.* ¶ 13.) His conduct towards Plaintiff contributed to Defendant's decision to terminate him, although it was not a significant reason for his termination. (*Id.* ¶ 14.)

In March 2006, Mr. Spelta gave Plaintiff a positive performance review and a 3% pay increase. (*Id.* ¶ 16-17.) On approximately March 20, 2006, Joe Gunning replaced Malouly as Plaintiff's Area Sales Manager and direct supervisor. (*Id.* ¶ 18.) In April 2006, Plaintiff missed a meeting she was expected to attend and failed to call Gunning in advance of the meeting to notify him that she would not attend. (*Id.* ¶ 20-21.) When Gunning called Plaintiff after the meeting, Plaintiff stated that she missed the meeting because her daughter was sick. (*Id.* ¶ 22; Schlaifer Decl. ¶ 2.) Later in April 2006, Gunning permitted Plaintiff to leave a "war games" sales meeting early because of the Passover holiday. (SUF ¶¶ 23-24.)

In May 2006, Plaintiff was late to Defendant's "National Meeting" in Denver and as a result missed a half-day of the three-day meeting. (*Id.* ¶ 25.) Plaintiff called Gunning the day she was supposed to arrive to notify him that she would arrive late because her daughter was sick. (*Id.* ¶ 26.) Because of these three meetings, Gunning felt that a pattern was developing and became concerned as to whether Plaintiff was able to devote sufficient time to her work responsibilities. (*Id.* ¶ 27.)

Soon after Gunning assumed his new position as Area Sales Manager, he reviewed the call reporting records of all the employees he had been assigned to supervise. (*Id.* ¶

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|----------|------------------------|------|-----------------|
| Title    | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

28.)  At some point-- whether it was a result of that review is disputed, but irrelevant--
Gunning noticed that Plaintiff was not recording her sales calls on a daily basis.  (SGI. ¶
29.)  Although Gunning was unaware of a "set requirement within [Defendant's policy],"
he required his employees to record their sales calls on a daily basis.  (Gunning Dep. at
115:4-11.)  Gunning also noticed that there were "plenty of days" for which Plaintiff had
entered no sales calls, including 11 days when she recorded no sales calls or other work
activity but did not count them as vacation days.  (SUF ¶¶ 31, 34.)  Thereafter, Gunning
sent a voicemail to all of his employees instructing them to enter their calls daily and to
download them to Defendant's computer system at least three times a week.  (SUF ¶ 32.)
Plaintiff admits that when Gunning subsequently checked Plaintiff's call records, these
"gaps" in her call reporting had not been corrected.  (*Id.* ¶ 33.)

On May 24, 2006, Gunning took a "field visit" with Plaintiff in which he
accompanied her on her sales calls to evaluate her performance.  (*Id.* ¶ 35.)  Plaintiff
arrived 90 minutes late to meet Gunning and had trouble locating the office of the first
doctors she intended to visit at the hospital.  (*Id.* ¶ 37.)  Plaintiff claimed that during her
maternity leave the doctors' offices had moved to another location in the hospital;
however, she also stated that she had visited those offices several times a week since she
returned from her leave.  (*Id.* ¶¶ 38-39.)  When Plaintiff found the office, the receptionist
told Plaintiff and Gunning that the doctors were not in the office.  (*Id.* ¶ 40.)  Next,
Gunning and Plaintiff drove in Plaintiff's car to see Dr. Overby in Downey; Plaintiff
again had trouble finding Dr. Overby's office.  (*Id.* ¶¶ 41-42.)  (It was her second visit to
that doctor in five years.  SGI ¶ 42.)  Plaintiff's call records show that she had made five
calls to Dr. Overby between her return to work in February 2006 and her field visit with
Gunning in May 2006.  (SUF ¶¶ 47, 60.)  When they arrived at Dr. Overby's office, his
receptionist told them that he was not in that day and was never in on that day of the
week.  (*Id.* ¶ 48.)  Finally, they drove to the office of Dr. Felman.  (*Id.* ¶ 50.)  When they
arrived, his receptionist stated that he did not meet with pharmaceutical representatives
without appointments.  (*Id.* ¶ 51.)  Because Plaintiff did not have an appointment, she and
Gunning left Dr. Felman's office without seeing him.  (*Id.* ¶ 52.)

Gunning concluded that Plaintiff performed poorly on the field visit.  (SUF ¶ 53;
Gunning Decl. ¶ 7.)  During the field visit, he sensed that the staff at the various offices
did not recognize Plaintiff.  (SUF ¶ 54.)  He noticed that Plaintiff did not call the staff
members by their names, did not know the various doctors' schedules, and had trouble

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

finding their offices. (*Id.* ¶¶ 55-57.) Gunning concluded that Plaintiff's "fundamental territory management skills" were below expectations. (*Id.* ¶ 58.)

When Gunning later checked Plaintiff's call logs, he noticed that Plaintiff recorded five sale calls to Dr. Overby and 5 calls to Dr. Felman between February 1, 2006 and May 23, 2006. (*Id.* ¶ 60; Gunning Decl. Ex. A.) Plaintiff's lack of familiarity with the offices and schedules of these doctors led Gunning to suspect that Plaintiff had not actually made all of the calls she had recorded or that the doctors were not present when she made her calls. (SUF ¶¶ 61-62.) Gunning then conducted an investigation of Plaintiff's call reporting. (*Id.* ¶ 63.) Gunning claims, without identifying any specific doctors' offices, that he called some of the doctor's offices and a few of the receptionists told him that the doctors were not in the office on the days that Plaintiff had purportedly visited. (*Id.* ¶ 64-66.)[3] Gunning concluded that Plaintiff had falsified her logs. (*Id.* ¶ 67.) (Plaintiff counters that these were calls to "customers" who included nurses, receptionists and staff members. SGI ¶ 66.)

On June 7, 2006, Gunning held a "clarification meeting" with Plaintiff and another Area Sales Manager, Carol Vuceta. (SUF ¶¶ 68-69.) Gunning asked Plaintiff for information about some of the sales calls she had recorded. (*Id.* ¶ 71.) Plaintiff's responses did not convince Gunning that the information recorded in her sales call records was accurate. (*Id.* ¶ 72.) For example, Gunning asked Plaintiff about an inconsistency between two sales calls with Dr. Miller she had recorded; Dr. Miller's staff had told Gunning that Dr. Miller was not present on those two dates. (*Id.* ¶¶ 73-75.) Plaintiff concedes that she was unable to recall at the clarification meeting whom she had spoken with or what she had discussed on calls she had recorded a few weeks earlier. (*Id.* ¶ 76.) Plaintiff stated at the meeting that Gunning had told her during their field visit that she could record a professional call even when she saw a nurse or receptionist but not the doctor. (SGI ¶¶ 73, 81.) Defendant does not dispute that Gunning told Plaintiff that a "call" included interaction with a "customer" or a "clinician." (Def. Reply to SGI ¶ 115.)

At the "clarification meeting," Plaintiff also admitted that she did not always enter

___

[3] Plaintiff's hearsay objection to Gunning's testimony of what he was told is overruled.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

her calls on the day she made them so she could not be certain if specific calls were accurate or not. (SUF ¶ 77.) She also conceded that she documented calls on dates that may not be correct because she made errors inputting the information into Defendant's computer system, which the computer system did not allow her to correct. (*Id.* ¶¶ 78-79.) After conferring, Gunning and Vuceta concluded that Plaintiff's responses were not credible and that some of Plaintiff's call records were inaccurate. (SUF ¶¶ 82-83.) They decided to terminate Plaintiff's employment, returned to the room and notified her of that. (*Id.* ¶¶ 84-85.)

The form that Defendant used to record Plaintiff's termination contained four boxes representing potential reasons for "involuntary" termination. (Byrnes Decl. Ex. 6.) On Plaintiff's "termination form," the misconduct box was checked and within the "misconduct" box the phrase "Falsification of Records" was circled. (*Id.*)

Gunning testified that when he made the decision to terminate Plaintiff he was unaware of Plaintiff's complaint against Malouly. (SUF ¶ 86; Gunning Dep. at 139:22-141:7.) In her deposition testimony, Plaintiff did not disclose that she had mentioned this complaint to Gunning. However, in a declaration filed in opposition to this motion, Plaintiff asserts that "[p]rior to being fired, [she] told Mr. Gunning about the complaints [she] had made about George Malouly calling [her] and threatening [her] livelihood while [she] was on maternity leave." (Schlaifer Decl. ¶ 4.) Plaintiff does not dispute that Vuceta was unaware of any such complaint when she participated in the decision to terminate Plaintiff. (SUF ¶ 87.) At the time of her termination, Plaintiff was two-days pregnant, but she did not know that she was pregnant. (*Id.* ¶¶ 88-89.) She did inform Gunning during the field visit that she was planning to try to have another child. (*Id.* ¶ 91.) Plaintiff admits that Gunning did not say anything negative in response to Plaintiff's statement that she was trying to have another child. (*Id.* ¶ 92.)

Defendant does not dispute that Plaintiff was a "solid" employee for almost five years, who performed in the top third of Defendant's sales force and who consistently received positive reviews. (SGI ¶ 102.)

Following Plaintiff's termination, Gunning attempted to hire for the vacant Sales Specialist position a female employee named Ragan Edwards whom he knew was trying to have children at the time. (SUF ¶ 94.) Although the position was eliminated before

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|----------|----------------------|------|-----------------|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

Edwards could be hired, Gunning and Vuceta hired her as a Sales Specialist in the Oncology Unit after she had a baby and returned from maternity leave in 2007. (SUF ¶¶ 95-96.) Defendant continues to employ Edwards. (*Id.* ¶ 97.) In 2006, Vuceta and Gunning hired Jennifer Stallcup-Yesmian, who was approximately five-months pregnant at the time. (*Id.* ¶ 98.) After taking a maternity leave, Stallcup-Yesmian continues to be employed by Defendant. (*Id.* ¶ 99.)[4]

On April 4, 2007, Plaintiff filed suit against Defendant in the Los Angeles Superior Court, asserting four claims for relief: (1) Sex and Pregnancy Discrimination in Violation of Cal. Gov't Code §§ 12900 *et seq.* (California Fair Employment and Housing Act or FEHA); (2) Violation of the California Family Rights Act (CFRA); (3) "Retaliation for Opposing Discrimination in Violation of Government Code § 12900 *et seq.*"; and (4) Wrongful Termination in Violation of Public Policy. Plaintiff alleges that Defendant "terminated her because she took a maternity leave and because she told her supervisor that she planned to have another child." (Compl. ¶ 7.) She also alleges that during her family medical leave Plaintiff's manager, George Malouly, "called her at home, pressured her to return to work despite medical advice to the contrary, threatened to collapse her territory, remove her from her position, and replace her with a male, all because she had taken time off for the pregnancy." (Compl. ¶ 8.) Plaintiff claims that the stated reasons for her termination, "inaccurate reporting of sales calls, were untrue" and "clearly a pretext." (*Id.* ¶ 10.)

On May 14, 2007, Defendant removed the case to federal court. On May 27, 2008,

---

[4] The Court overrules Plaintiff's objections to paragraphs 94-99 of the SUF that "[p]ost litigation attempts to cover up illegal discrimination are not admissible" under Federal Rule of Evidence 404. (*See* SGI ¶¶ 94-99.) The Ninth Circuit has stated that "evidence of post-event occurrences are rarely relevant to the issue of whether the defendant actually engaged in discrimination. . . . Curative measures simply do not tend to prove that a prior violation did not occur." *Swinton v. Potomac Corp.*, 270 F.3d 794, 811 (9th Cir. 2001). While Defendant's hiring decisions after terminating Plaintiff are not relevant to the issue of whether Defendant discriminated against Plaintiff, they are relevant to whether Defendant had an "unwritten rule" that female employees should not get pregnant or express an intent to have children. (*See* Opp'n at 10.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

Defendant moved for summary judgment or, in the alternative, summary adjudication.

## III.   LEGAL STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV.   DISCUSSION

### A.   First Cause of Action: Sex and Pregnancy Discrimination in Violation of FEHA[5]

Plaintiff asserts a claim for sex and pregnancy discrimination in violation of FEHA. (Compl. ¶ 27.) Specifically, Plaintiff alleges that Defendant "terminated her because she took a maternity leave and because she told her supervisor that she planned to have another child." (*Id.* ¶ 7.)

California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of intentional discrimination. *See Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 354 (Cal. 2000) (affirming trial court's grant of summary judgment for employer because plaintiff's evidence raised, at best, "only a weak suspicion that discrimination was a likely basis for his release"). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The United States Supreme Court has outlined the requisite showings by the parties in a case alleging unlawful discrimination as follows:

---

[5]   Inexplicably, Plaintiff does not analyze each of the four causes of action separately. Instead, Plaintiff makes the conclusory assertion, in a footnote, that "[c]onversely, because the first two [causes of action] should survive, the third should as well." (Opp'n at p.11 n.2.) Plaintiff's opposition brief does not even address her fourth cause of action.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

The nature of the burden that shifts to the defendant should be understood in the light of plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citations omitted).

> 1.   *Prima Facie* Case

Generally, in order to state a *prima facie* case of discrimination, "the plaintiff must provide evidence that (1) [she] was a member of a protected class, (2) [she] was qualified for the position he sought or was performing competently in the position he held, (3) [she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 24 Cal.4th at 355. For the purpose of this motion for summary judgment, Defendant concedes that Plaintiff can establish a *prima facie* case of discrimination based solely on the timing of her termination.

> 2.   Legitimate, non-discriminatory reason

Once the plaintiff establishes her *prima facie* case, the burden of production shifts to the employer to produce admissible evidence, sufficient to "raise a genuine issue of fact and to justify a judgment for the [employer] that its action was taken for a legitimate,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|

| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* |
|---|---|

nondiscriminatory reason." *Guz*, 24 Cal.4th at 355-56 (internal quotations omitted). "[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct." *Id.* at 358. "While the objective soundness of an employer's proffered reasons supports their credibility [], the ultimate issue is simply whether the employer acted with a motive to discriminate illegally." *Id.* "Thus, 'legitimate' reasons in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." *Id.* (internal citation omitted).

Defendant has provided evidence sufficient to meet its burden of production. Defendant asserts that it terminated Plaintiff because Gunning, her direct supervisor, reasonably and in good faith believed that Plaintiff did not document her call records accurately and falsified her call records in the following respects:

(1) by failing to verify the accuracy of the dates of the calls she entered; (2) by having many dates where she did not record any sales calls or any other activity, even though she did not take those days as vacation days; (3) by recording professional calls to doctors who were not in the office when she recorded calls to them; (4) by recording multiple calls to doctors' offices with which she apparently had no familiarity as demonstrated by her conduct during the field visit on May 24th; (5) by recording sales calls that she could not remember or provide any information about only a few weeks later; and (6) by admittedly having errors in her sales call records.

(Pl. Mem. at 12.)  Gunning's suspicion that Plaintiff falsified her call records was based on his review of Plaintiff's sales call records, his observations during the field visit with Plaintiff on May 24, 2006, his investigation as to whether doctors were in the office on the days Plaintiff recorded calls to them, and his meeting with Plaintiff on June 7, 2006. Defendant submitted Plaintiff's call records and testimony of Gunning and Vuceta supporting Gunning's suspicions.  These stated reasons are supported by admissible evidence.  They are not disputed by Plaintiff.  (She generally and conclusorily objects "This is not the reason Novartis terminated Schliafer" but cites to no evidence to support that contention.)  These reasons, moreover, are unrelated to any prohibited bias and are thus legitimate and non-discriminatory.

     3.     <u>Pretext</u>

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

If the employer sustains its burden of articulating some legitimate nondiscriminatory reason, "the presumption of discrimination disappears." *Guz*, 24 Cal.4th at 356 (citations omitted). "The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* "In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." *Id.* However, "an inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons." *Id.* at 360. "The pertinent statutes do not prohibit lying, they prohibit discrimination." *Id.* at 361. "Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons." *Id.* "Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions." *Id.* (emphasis in original). "Accordingly, the great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.*" Id.* "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." *Id.* at 356.

Here, Plaintiff has failed to meet her burden of proffering evidence sufficient to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Arteaga v. Brink's, Inc.*, 163 Cal.App.4th 327, 343 (Cal. App. 2008) (affirming trial court's grant of summary judgment to the employer for plaintiff's claim for disability discrimination under FEHA) (quoting *Burdine*, 450 U.S. at 253).[6] Plaintiff asserts that "the only reason that Novartis terminated Schlaifer was because how she recorded her calls." (Opp'n at 8.) Plaintiff claims that Defendant's stated reasons for firing her were pretextual because Defendant's "policies are promulgated through its supervisors" and Plaintiff's supervisor,

---

[6] In *Arteaga*, the defendant's reason for discharging the plaintiff was management's loss of confidence in him. *Arteaga*, 163 Cal.App.4th at 352. The Court of Appeal concluded that "[g]iven the nature of [defendant's armored transport] business, the loss of confidence in an employee who occupies a messenger position is a legitimate, nondiscriminatory reason for discharge." *Id.*

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|

| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* |
|---|---|

Gunning, is the same person whom she told that she wanted to have another child, the same person who told her to record her calls as she did, and the same person who ultimately fired her.  (*Id.* at 3, 9.)  Plaintiff relies on Gunning's admission that Plaintiff asked him, during their field visit in May 2006, whether contact with a receptionist constituted a "call" and that he responded that any interaction with a "customer" or "clinician" constituted a "call."  (Opp'n at 9; SGI ¶¶ 113-17.)  Plaintiff thus contends that Defendant "set her up" because "after [she] told Gunning she wanted to have another child, he used her call recording as a way to fire her."  (Opp'n at 10.)  Plaintiff concludes that "[w]hen [she] broke one of [Defendant's] unwritten rules by getting pregnant, complaining about discrimination, and wanting to have another child, [Defendant] used its noble-sounding policies to fire her."  (*Id.*)

Plaintiff fundamentally misconstrues Defendant's stated reasons for terminating her.  Gunning decided to fire Plaintiff not only because he believed that she failed to record her calls accurately-- by failing to verify the accuracy of the dates she entered and by admitting to having errors in the sales call records-- but because he believed that she had falsified some of her call records.  Gunning observed that Plaintiff recorded multiple calls to doctors' offices with which she exhibited little familiarity on the field visit, she recorded calls to doctor's offices on days that Gunning learned the doctors were not in the office, and she failed to recall any information at the clarification meeting about sales calls she had made just a few weeks earlier.  Thus, Defendant's asserted reason for firing Plaintiff involved more than how she recorded her calls but whether she in fact had made them.  It was this reason-- falsification of records-- that Defendant cited on Plaintiff's "termination form."  (Byrnes Decl. Ex. 6.)

Even assuming that Defendant's stated reasons for firing Plaintiff were not the real reasons for her termination, Plaintiff does not present or point to any evidence that supports a rational inference that intentional discrimination on the basis of gender or pregnancy *was* the real reason.  Instead, Plaintiff's opposition and statement of genuine issues are replete with unsupported accusations.  For example, even if Plaintiff relied on Gunning's alleged instruction that she was allowed to record sales calls when she did not see a doctor, that purported dispute does not raise a triable issue that Defendant's stated reason for her termination-- Plaintiff's "falsification of records"-- was a pretext for discrimination.  In order to survive summary judgment, the "plaintiff must do more than raise the inference that the employer's asserted reason is false.  [A] reason cannot be

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks v. KNTV Television, Inc.*, 160 Cal.App.4th 994, 1003 (2008) (affirming summary judgment for employer because there was no evidence to support a finding that the employer's dissatisfaction with plaintiff's performance was pretextual) (emphasis in original).[7] *See also Arteaga*, 163 Cal.App.4th at 343 ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.' . . . In other words, '[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'") (quoting *Burdine*, 450 U.S. at 253). *Accord Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000).

The California Court of Appeal's decision in *Hersant v. Department of Social Services*, 57 Cal.App.4th 997 (1997) is instructive. In *Hersant*, the employer articulated several reasons for the plaintiff's demotion, including his intentional falsification of information and refusal to follow procedures. *Id.* at 1006-07. The plaintiff "presented evidence showing there was no validity to any of the stated bases for his demotion" and that his conduct did not violate any policy of his employer. *Id.* at 1007. Although it concluded that the plaintiff "raised triable issues concerning whether the actions of [the employer] were reasonable and well considered," the Court of Appeal affirmed the trial court's grant of summary judgment for the employer because a trier of fact could not reasonably conclude that the employer's stated reasons "were pretextual and used merely to veil an act of age discrimination." *Id.* at 1009. The same is true here. As the *Hersant* court noted,

As several federal courts have stated: . . . the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence,

---

[7] As was the case in *Hicks*, here there "is no detectable pattern of invidious discrimination in [Gunning's] hiring decisions. There is no evidence of any kind to suggest that anyone at [Novartis] was dissatisfied with plaintiff on account of" her gender or stated intention to have another child. 160 Cal.App.4th at 1012.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | Date | August 28, 2008 |
|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | |

and hence infer that the employer did not act for the [the asserted] non-discriminatory reasons.

*Id.* at 1005 (citations omitted).  Plaintiff contends that Defendant "uses 'falsification' as a pretext so often that it has a box to check on the termination form for 'falsification.'" (Opp'n at 10; SGI ¶ 120.)  However, Plaintiff cites no evidence in support of this weak contention. Defendant, meanwhile, cites its "Code of Employee Conduct" to show that one of the fundamental requirements of any pharmaceutical sales representative employed by Defendant is to maintain accurate business records.  (Vuceta Decl. Ex. at 3.) In addition, Defendant presents evidence that after terminating Plaintiff it hired and continues to employ two employees who took maternity leaves.  Plaintiff's accusation of pervasive pretextual termination is based solely on speculation and does not raise a triable issue.

Finally, Plaintiff cites what she characterizes as Gunning's "stunning" statement of "discriminatory animus."  (Opp'n at 12.)  In his declaration filed in support of this summary judgment motion, Gunning states that based on Plaintiff's "missing a meeting, leaving another meeting early and arriving late at a third meeting in 2006, [he] became concerned about whether [Plaintiff] was able to devote sufficient time to her job responsibilities."  (Gunning Decl. ¶ 4.)  At worst, Gunning's statement was insensitive, given that the reasons Plaintiff missed the first meeting and arrived late to the second meeting was that her child was sick and that she left the third meeting early to celebrate the Passover holiday.  However, it is unclear how Gunning's statement evidences "discriminatory animus."  Indeed, his rather mild statement reflects the understandable reaction of a supervisor, who after two months in a new position, notices an employee missing, arriving late or leaving early at three meetings.[8]  Moreover, Gunning testified in his deposition that the fact that Plaintiff left one meeting early and arrived late to another did not factor into his decision to fire her.  (Gunning Decl. 89:7-90:2.)

In sum, Plaintiff has not submitted evidence sufficient for any trier of fact to conclude that the true reason for her termination was discrimination.  Thus, the Court

---

[8] At the hearing on this motion, counsel for Plaintiff repeatedly misstated what Gunning said, claiming (inaccurately) that Gunning had testified that he was upset that Plaintiff had taken time off to care for her sick child.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | | Date | August 28, 2008 |
|----------|------------------------|--|------|-----------------|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | | |

GRANTS summary judgment on Plaintiff's first cause of action.

### B.    Second Cause of Action: Violation of the California Family Rights Act

Plaintiff next asserts a claim for violation of the California Family Rights Act, Cal. Gov't Code section 12900 *et seq.*  She alleges that Defendant "discriminated against [her] on account of her exercise of rights under the California Family Rights Act . . . ." (Compl. ¶ 20.)  Plaintiff does not allege that Defendant denied her any medical leave to which she was entitled under CFRA.  It is undisputed that Defendant permitted Plaintiff to take a seven-month maternity leave in 2005.  Given that Plaintiff's opposition did not address the CFRA claim specifically, it appears that the claim is based on her allegations that Defendant terminated her in retaliation for taking her maternity leave or because she told Gunning that she was trying to have another child.

Cal. Gov't section 12945.2(l) provides that:

It shall be an unlawful employment practice for an employer to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of any of the following: (1) An individual's exercise of the right to family care and medical leave provided by subdivision (a). (2) An individual's giving information or testimony as to his or her own family care and medical leave, or another person's family care and medical leave, in any inquiry or proceeding related to rights guaranteed under this section.

Cal. Gov't § 12945.2(l).  The elements of a cause of action for retaliation in violation of CFRA are as follows:

(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave.

*Faust v. California Portland Cement Co.*, 150 Cal.App.4th 864, 885 (2007).  Once a plaintiff makes out "a *prima facie* case by presenting evidence that he was entitled to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | | Date | August 28, 2008 |
|---|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | | |

leave under the CFRA, he availed himself of that right, and was terminated for taking the leave to which he was entitled," then the burden shifts to the defendant "to present evidence to establish a legitimate, nonretaliatory reason for the discharge." *Id.*

As discussed above, Defendant has established a legitimate, non-discriminatory reason for Plaintiff's termination. That reason is also nonretaliatory. Thus, Plaintiff has also failed to raise any triable issue as to whether Defendant terminated her "because of her exercise of her right to CFRA leave."

Moreover, Plaintiff's allegation that she informed Gunning during the field visit that she was planning to try to have another child does not create a triable issue. Gunning did not say anything negative in response to this statement. Nor did he know that Plaintiff was pregnant when he terminated her. There is simply no evidence that Gunning fired her because of her stated intention to have another child. Thus, the Court GRANTS summary judgment on Plaintiff's second cause of action.

### C. Third Cause of Action: Retaliation for Opposing Discrimination in Violation of Government Code § 12900 *et seq.*

Plaintiff asserts a claim for retaliation in violation of FEHA "because she reported and objected to illegal workplace discrimination." (Compl. ¶ 23.) Courts analyze claims for retaliation under FEHA under the same *McDonnell Douglas* test that applies to discrimination claims. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042-43 (2005) (citing *Flait v. North American Watch Corp.* 3 Cal.App.4th 467 (1992) (adopting the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973))).

Assuming without finding that Plaintiff can state a *prima facie* case for retaliation under FEHA, there is no triable issue that Defendant's stated reason for terminating Plaintiff was a pretext for retaliation. Plaintiff alleges that she engaged in protected activity when she made a complaint in February 2006 about George Malouly's conduct towards her during her maternity leave. However, she has presented no evidence that she was terminated because of her complaint against Malouly. Defendant promptly fired Malouly after Plaintiff's complaint and he did not participate in Defendant's decision to fire her. The two individuals who did make the decision to terminate Plaintiff, Gunning

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3155 AHM (VBKx) | | Date | August 28, 2008 |
|---|---|---|---|---|
| Title | SCHLAIFFER v. NOVARTIS PHARMACEUTICALS CORPORATION, *et al.* | | | |

and Vuceta, both testify that they were not aware of Plaintiff's complaint about Malouly when they made the decision to fire Plaintiff. Although her deposition testimony did not disclose that she had mentioned the complaint to Gunning, her declaration filed in opposition to this motion asserts that prior to being fired she told Gunning about the complaint. The declaration does not state when she made this disclosure to Gunning. In any event, this factual dispute on its own is not a genuine issue for the jury. Defendant terminated Plaintiff approximately four months after her complaint about Malouly for what this Court finds no reasonable jury could consider as anything but legitimate, non-discriminatory and non-retaliatory reasons. No reasonable trier of fact could conclude that Defendant terminated Plaintiff in retaliation of her complaint about Malouly's conduct. Thus, the Court GRANTS summary judgment on the third cause of action.

### D.   Fourth Cause of Action: Wrongful Termination in Violation of Public Policy

Plaintiff asserts a claim for wrongful termination in violation of public policies prohibiting discrimination and retaliation under FEHA and Cal. Labor Code § 1102.5. (Compl. ¶ 26.) This claim is wholly grounded upon Plaintiff's claim of sex and pregnancy discrimination under FEHA. However, as discussed above, the Court finds Plaintiff's evidence as to gender and pregnancy discrimination to be wanting. Without evidence of discrimination, Plaintiff has no claim for wrongful termination. Thus, the Court GRANTS summary judgment on Plaintiff's fourth cause of action for wrongful termination.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment.

THIS ORDER IS NOT INTENDED FOR PUBLICATION.

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |